## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

| | |
|---|---|
| **DANIEL BLAKE,** : | **CIVIL ACTION** |
| **MELISSA SPOSITI,** : | |
| **MICHAEL SPOSITI, and** : | |
| **DAVID LINKER,** : | |
| **individuallyand on behalf of** : | |
| **all others similarly situated,** : | **NO. _____** |
| : | |
| **Plaintiffs** : | |
| : | |
| **vs.** : | **COMPLAINT – CLASS ACTION** |
| : | |
| **EQUIFAX, INC. and** : | **JURY TRIAL DEMANDED** |
| **EQUIFAX CREDIT** : | |
| **INFORMATION SERVICES LLC** : | |
| : | |
| **Defendants** : | |

_____:

## CLASS ACTION COMPLAINT

Plaintiffs Daniel Blake, Melissa Spositi, Michael Spositi, and David Linker (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by way of Complaint against Defendants, Equifax, Inc. and Equifax Credit Information Services LLC (collectively, "Equifax" or "Defendant"), say:

## I.    NATURE OF THE ACTION

1.    Plaintiffs bring this class action case against Defendant Equifax for its failures to secure and safeguard consumers' personally identifiable information ("PII"), including but not limited to names, addresses, dates of birth, driver's

license numbers, and Social Security numbers, as well as credit account information ("CAI"), which Equifax collected from various sources in connection with the operation of its business as a consumer credit reporting agency, and for failing to provide timely, accurate and adequate notice to Plaintiffs and other consumer Class members that their PII and/or CAI was stolen and of precisely what types of information were stolen.

2.      Equifax has acknowledged that a cybersecurity incident ("Data Breach") potentially impacting approximately 143 million U.S. consumers has occurred.  It also has acknowledged that unauthorized persons exploited a U.S. website application vulnerability to gain access to certain files.  Equifax claims based on its investigation that the unauthorized access occurred from mid-May through July 2017.  The information accessed primarily includes names, addresses, Social Security numbers, dates of birth, Social Security numbers, and, in some instances, driver's license numbers.  In addition, Equifax also has admitted that credit card numbers for approximately 209,000 U.S. consumers, and certain dispute documents with personal identifying information for approximately 182,000 U.S. consumers, were accessed.

3.      The vulnerability in Equifax's data system that was exploited is one that was reported and that Equifax knew or should have known about in March

2017.  However, Equifax did not remedy the vulnerability in its data system before the unauthorized access began in May 2017.

4.     Equifax has acknowledged that it discovered the unauthorized access on July 29, 2017.  But it did not immediately notify consumers of the data breach. Instead, while Equifax kept this information to itself, it has been reported that Equifax's executives sold off at least $1.8 million worth of company stock shares. Chief Financial Officer John Gamble sold shares worth $946,374.  President of U.S. information solutions, Joseph Loughran, exercised options to dispose of stock worth $584,099.  President of workforce solutions, Rodolfo Ploder, sold $250,458 worth of stock.

5.     The PII for Plaintiffs and Class members they seek to represent was compromised due to Equifax's acts and omissions and its failure to properly or adequately protect the PII.

6.     Equifax disregarded the rights of Plaintiffs and Class members by intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its data systems were protected, by failing to disclose to consumers the material fact that it did not have adequate computer systems and security practices to safeguard PII, by failing to take available steps to prevent and stop the breach from happening, and by failing to timely monitor and detect the breach.

3

7.     As a result of the Equifax data breach, Plaintiffs' and Class members' PII has been exposed to criminals for misuse.  The injuries suffered or likely to be suffered by Plaintiffs and Class members as a direct result of the data breach include:

a.     unauthorized use of their PII;

b.     theft of their personal and financial information;

c.     costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

d.     damages arising from the inability to use their PII;

e.     loss of use and access to their account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit, including decreased credit scores and adverse credit notations;

f.     costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address and attempt to ameliorate and mitigate the actual and future consequences of the Data Breach, including finding fraudulent charges, purchasing credit monitoring and identity theft protection services, and the stress, nuisance and annoyance of dealing with all issues resulting from the Equifax data breach;

g.     the imminent and impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals and misused via the sale of Plaintiffs' and Class members' information on the Internet black market;

h.     damages to and diminution in value of their PII entrusted to Equifax for the sole purpose of purchasing products and services from Equifax; and

i.     the loss of Plaintiffs' and Class members' privacy.

8.     The injuries to Plaintiffs and Class members were directly and proximately caused by Equifax's failure to implement or maintain adequate data security measures for PII.

9.     Plaintiffs and Class members also retain a significant interest in ensuring that their PII be protected by Equifax from any further breaches, and seek to remedy the harms they have suffered.

10.     Plaintiffs bring this action to remedy these harms on behalf of themselves and all similarly situated individuals in New Jersey whose PII was accessed ruing the data breach.  Plaintiffs seek remedies including, but not limited to:  actual and statutory damages under the Fair Credit Reporting Act; reimbursement for out-of-pocket losses; other compensatory damages; more protective credit monitoring services with accompanying identity theft insurance; and injunctive relief, including an order requiring Equifax to implement improved data security measures.

## II.    JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question) because Plaintiffs' FCRA claims arise under the

laws of the United States.  The Court has supplemental jurisdiction over Plaintiffs' State-law claims under 28 U.S.C. § 1367(a) because these claims arise from the same nucleus of operative facts as do the federal-law claims and therefore form part of the same case or controversy.

12.     The Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (diversity, class action) because there are more than 100 putative Class members, Plaintiffs and at least some other Class members have a different citizenship from Equifax, and the amount in controversy exceeds $5 million exclusive of interest and costs.

13.     The Court has personal jurisdiction over Equifax because Equifax regularly conducts business in the State of New Jersey and has sufficient minimum contacts in this District.  Equifax intentionally availed itself of this jurisdiction by marketing and selling products and services in the State of New Jersey.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this District and Equifax conducts substantial business in this District.

### III.   PARTIES

15.     Plaintiff Daniel Blake is an individual consumer and citizen of the State of New Jersey, residing in the City of Mahwah, Bergen County, State of New Jersey.  Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c),

and is protected by and entitled to enforce the remedies of the FCRA.  Plaintiff is a victim of the data breach, and has spent time and effort monitoring his financial accounts.

16.     Plaintiff Melissa Spositi is an individual consumer and citizen of the State of New Jersey, residing in the City of Westville, Gloucester County, State of New Jersey.  Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c), and is protected by and entitled to enforce the remedies of the FCRA.  Plaintiff is a victim of the data breach, and has spent time and effort monitoring her financial accounts.

17.     Plaintiff Michael Spositi is an individual consumer and citizen of the State of New Jersey, residing in the City of Westville, Gloucester County, State of New Jersey.  Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c), and is protected by and entitled to enforce the remedies of the FCRA.  Plaintiff is a victim of the data breach, and has spent time and effort monitoring his financial accounts.

18.     Plaintiff David Linker is an individual consumer and citizen of the State of New Jersey, residing in the City of Marlton, Burlington County, State of New Jersey.  Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c), and is protected by and entitled to enforce the remedies of the FCRA.

Plaintiff is a victim of the data breach, and has spent time and effort monitoring his financial accounts.

19.     Defendant Equifax, Inc. is a Delaware corporation with its principal place of business located at 1550 Peachtree Street NE, Atlanta, Georgia 30309. Equifax, Inc. is authorized to do business throughout the State of New Jersey.

20.     Defendant Equifax Credit Information Services LLC is a Georgia limited liability company with its principal place of business located at 1550 Peachtree Street, NW, Atlanta, GA 30309.  Equifax Credit Information Services LLC is authorized to do business throughout the State of New Jersey.

21.     Equifax was and is a "person" as defined by 15 U.S.C. § 1681a(b), is a "consumer credit reporting agency" as defined by 15 U.S.C. § 1681a(f), is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing to third parties "consumer reports" as defined by 15 U.S.C. § 1681a(d), and is restricted by and subject to the remedies of the FCRA.

## IV.     FACTUAL ALLEGATIONS

22.     Equifax is one of three nationwide credit-reporting agencies or companies ("CRAs") that track and rate the financial history of U.S. consumers. Creditors supply Equifax and the other CRAs with data about loans and credit accounts and payments thereon, as well as information on matters ranging from

child support payments to rent and utility payments to residential addresses and employment history.  All of this and other information factors into credit scores produced by Equifax and the other CRAs.

23.     Unlike with many other data breaches, many of the people affected by the Equifax breach may be unaware that they are affected because Equifax obtains its data not from consumers themselves, but from lending institutions that report on the credit activity of individual consumers to the CRAs, and also from purchasing public records from third-party sources.

24.     According to Equifax's September 7, 2017 report, Equifax discovered the breach on July 29, 2017.  The perpetrators gained access by exploiting a "website application vulnerability" on one of the company's U.S.-based servers. The hackers then were able to retrieve "certain files."

25.     According to Equifax's September 13, 2017 update, the vulnerable website application was called "Apache Struts CVE-2017-5638."  The vulnerability of this application was publicly reported by Ars Technica in March 2017, two months *before* the Equifax data breach began.

26.     Included among the breached files were tens of millions of people's personal data:  names, addresses, dates of birth, and Social Security numbers.  In addition, Equifax has stated that approximately 209,000 people's credit card

account numbers were breached and that 182,000 people's additional personal information related to disputed account charges was breached.

27.     Plaintiffs and Class members suffered actual injury in the form of damages to and diminution in the value of their PII – a form of intangible property that Equifax held in confidence and that was compromised in the data breach.

28.     Plaintiffs and Class members also suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft and misuse posed by their PII being placed in the hands of persons who have misused or will misuse this information.

29.     Plaintiffs and Class members also have a continuing interest in ensuring that their private information, which remains in Equifax's possession, be protected against future breaches.

30.     At all relevant times, Equifax was or reasonably should have been aware that the PII it collected, maintained, and stored is highly sensitive, susceptible to attach, and could be used by third parties for wrongful purposes, such as identity theft and fraud.

31.     PII is a frequent target of data breaches, and is reported in the press to be highly coveted by hackers.  Despite the frequency of public pronouncements of data breaches of corporate entities, including Experian Information Solutions, Inc.—one of the big three CRAs, along with Equifax—in 2015, Equifax

10

maintained insufficient and inadequate systems to protect the PII of Plaintiffs and Class members.

32.     PII is a valuable commodity.  A "cyber blackmarket" exists in which persons openly post stolen Social Security numbers and other personal identification information on underground Internet sites.  Fraudsters can use PII to open new financial accounts and take out loans in other people's names, incur charges on existing accounts, or clone ATM, debit, or credit cards.

33.     Legitimate and criminal actors alike recognize the value of PII contained in a creditor or merchant's data systems.  For example, in a large-scale data breach of a major software company in 2013, hackers compromised both the account data of three million customers and the registration data containing PII of 38 million customers.[1]

34.     At all relevant times, Equifax knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable harms and costs to consumers that would occur if its data security system were breached.

35.     Equifax knew of the significant number of people whose PII it collected, and who would be harmed by a breach of its data systems.

---

[1]  Verizon 2014 PCI Compliance Report, available at: http://www.verizonenterprise.com/resources/reports/rp_pci-report-2014_en_xg.pdf (last visited Sept. 12, 2017) at 54 ("Increasingly criminals are using biographical data obtained from multiple sources to perpetrate more and larger thefts.").

36.    Despite publicly available knowledge of compromises of other companies' databases containing PII by third parties, Equifax had a lackadaisical, reckless, or, at least negligent approach to maintaining the privacy and security of tens of millions of consumers' PII.

37.    The consequences of Equifax's failure to keep Plaintiffs' and Class members' PII secure are severe.

38.    The Federal Trade Commission (FTC) defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[2]  The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person[,]" including, but not limited to, name, Social Security number, and date of birth.[3]

39.    Personal identifying information is a valuable commodity to identity thieves.  As the FTC recognizes, once identity thieves have personal information, "they can drain your bank account, run up your credit cards, open new utility accounts, or get medical treatment on your health insurance.  An identity thief can file a tax [return] in your name and get your refund."[4]

---

[2]  17 C.F.R. § 248.201(b)(9).
[3]  17 C.F.R. § 248.201(b)(8).
[4]  Federal Trade Commission, *Warning Signs of Identity Theft*, available at: https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft (last visited Sept. 13, 2017).

40.     Identity thieves can use personal information to perpetrate a variety of additional types of crimes that likewise can harm victims, such as:  immigration fraud; obtaining a driver's license or identification card in the victim's name; or using the victim's information to wrongfully obtain government benefits.

41.     Identity theft victims must spend substantial time and often their own money to protect against and/or repair any impact to their credit.  The U.S. Department of Justice's Bureau of Justice Statistics ("BJS") found that, in 2014, identity theft "victims reported spending an average of about 7 hours clearing up the issues" related to the theft.[5]

42.     There may be time lags between when PII is stolen and when it is used, and between when identity theft is discovered and a resulting harm occurs. According to the U.S. Government Accountability Office ("GAO"):

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft.  Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years.  As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[6]

43.     Plaintiffs and Class members face years of surveillance of their financial and personal records, monitoring, and loss of rights.  The Class is

---

[5]  *Victims of Identity Theft, 2014* (Sept. 2015), available at: http://www.bjs.gov/content/pub/pdf/vit14.pdf (last visited Sept. 13, 2017), at 10.
[6]  Government Accountability Office, Report to Congressional Requesters: Personal Information (June 2007), available at: http://www.gao.gov/new.items/d07737.pdf (last visited Sept. 13, 2017), at 29.

incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

44. The Equifax data breach was a direct and proximate result of Equifax's failure to properly safeguard and protect Plaintiffs' and Class members' PII from unauthorized access, use, and disclosure, as required by federal and state regulations, industry practices, and the common law. Equifax failed to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiffs' and Class members' PII to protect against reasonably foreseeable threats to the security and integrity of this information.

45. As a direct and proximate result of Equifax's wrongful actions and inaction and the resulting data breach, Plaintiffs and Class members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, which requires them to take time they otherwise would dedicate to other life demands or endeavors in order to mitigate the actual and potential impact of the data breach. This mitigation activity includes placing "freezes" and/or "alerts" with credit reporting agencies, contacting financial institutions, closing or modifying financial accounts, reviewing and monitoring credit reports and accounts for unauthorized activity, and/or filing police reports.

46.     Equifax's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiffs' and Class members' PII, causing them to suffer economic damages and other actual harm for which they are entitled to compensation, including:

a.     theft of their personal and financial information;

b.     unauthorized charges on their banking and credit accounts;

c.     the injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals and misused via the sale of information on the black market;

d.     the improper disclosure of their PII;

e.     loss of privacy;

f.     ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the data breach;

g.     ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international market;

h.     ascertainable losses in the form of the loss of cash back or other benefits as a result of their inability to use certain accounts and cards affected by the data breach;

i.     loss of use and access to their account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit reports, including adverse credit notations;

15

      j.     loss of productivity and value of their time spent attempting to ameliorate or mitigate the actual and future consequences of the data breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, and imposition of withdrawal and purchase limits on compromised accounts; and

      k.     the distress, nuisance and annoyance of dealing with any and all such issues resulting from the data breach.

47.    While the PII of Plaintiffs and Class members has been stolen, Equifax continues to hold their PII.  Because Equifax has failed to prevent a breach or to stop its continuance after it was detected, Plaintiffs and Class members have an ongoing interest in ensuring that their PII is secure and not subject to further theft.

## V.    CLASS ALLEGATIONS

48.    Plaintiffs seek relief on behalf of themselves and as representatives of all others who are similarly situated.  Pursuant to Fed. R. Civ. P. 23(b)(3), Plaintiffs seek certification of a Class defined as:

> All natural persons residing in the State of New Jersey whose personally identifiable information was acquired by unauthorized persons in the data breach of Defendant Equifax, Inc.'s records that was publicly announced in September 2017.

49.    Excluded from the above Class are (a) Defendant and any of its affiliates, parents, or subsidiaries; (b) all employees of Defendant; (c) all government entities; (d) the Judges assigned to this case and their immediate

family and court staff; and (e) any individual who otherwise would be included in the Class as defined above, but who has commenced an action alleging a violation of the FCRA in any Court against either Defendant and/or any of their affiliates, parents, or subsidiaries, on or after May 1, 2017 and before the date on which the Class in this action is certified.

50.     Plaintiffs reserve the right to amend the Class definition set forth above if discovery and/or further investigation reveal that any Class should be expanded, contracted, divided into subclasses, or modified in any other way.

51.     The proposed Class meets the criteria for certification under Federal Rule of Civil Procedure 23(b)(3).

52.     **Numerosity, Fed. R. Civ. P. 23(a)(1).**  The Class for whose benefit this action is brought is so numerous that joinder of all members is impracticable. Although the exact number of Class members is unknown to Plaintiffs at this time, Equifax has reported that at least 143 million individuals nationwide had their PII compromised in the data breach.  The number of these individuals who reside in New Jersey is all-but certain to be in the hundreds of thousands, if not millions. Class members may be identified through objective means based on Equifax's records at issue, and may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

53.     **Commonality and Predominance, Fed. R. Civ. P. 23(a)(2) and**

**(b)(3).**  This action involves common questions of law and fact that predominate

over any questions affecting only individual Class members.  These predominating

common questions include:

    a.    whether Equifax had a duty to protect consumers' PII;

    b.    whether Equifax knew or should have known of the susceptibility of its data security systems to a data breach;

    c.    whether Equifax's security measures to protect its data systems were reasonable in light of industry standards and available technology;

    d.    whether Equifax's failure to implement reasonable and adequate security procedures and practices was negligent;

    e.    whether Equifax's failure to implement adequate data security measures was willful;

    f.    whether Equifax's failure to implement adequate data security measures proximately caused the compromise of Plaintiffs' and Class members' PII;

    g.    whether Equifax's conduct in failing to implement adequate data security measures constituted "unlawful practices" under the New Jersey Consumer Fraud Act ("NJCFA");

    h.     whether Plaintiffs and Class members were injured and suffered damages or other ascertainable losses because of Equifax's failure to reasonably protect their PII in its data network; and

    i.    whether Plaintiffs and Class members are entitled to injunctive and/or other forms of equitable relief.

54.   **Typicality, Fed. R. Civ. P. 23(a)(3).**  Plaintiffs' claims are typical of those of other Class members.  Plaintiffs have confirmed with Equifax that they were impacted by the data breach.  Plaintiffs' damages and injuries are akin to those of other Class members, and Plaintiffs seek relief for themselves consistent with that sought for the Class.

55.   **Adequacy, Fed. R. Civ. P. 23(a)(4).**  Plaintiffs are adequate representatives of the Class because they are members of the Class and are committed to pursuing this matter against Equifax to obtain relief for the Class.  Plaintiffs have no conflicts of interest with the Class.  Plaintiffs' undersigned counsel are competent and experienced in litigating consumer and class action cases, including cases with claims arising under the FCRA, UTPCPL, and the relevant common law.  Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

56.   **Superiority, Fed. R. Civ. P. 23(b)(3).**  A class action is superior to other available means for the fair and efficient adjudication of this controversy.  The FRCA and UTPCPL statutory schemes provide for appropriate monetary and injunctive relief to each Class member.  A class action will provide for an orderly and expeditious resolution and administration of the claims of the Class, and will foster economies of time, effort, and expense.

57.     A class action also is superior because the prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Equifax with respect to protection of the PII of millions of persons in its data system, or would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.  Prosecution of this action as a class action would eliminate the possibility of duplicative litigation of the same substantive claims.

58.     Plaintiffs do not anticipate any difficulty in the management of this litigation.

59.     Plaintiffs therefore seek for the Court to certify the Class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## **VI.    CLASS CLAIMS**

### **COUNT I**
### **WILLFUL VIOLATION OF THE FCRA,**
### **15 U.S.C. §§ 1681b, 1681e, and 1681n**

60.     Plaintiffs repeat and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

61.     At all pertinent times, Plaintiffs and Class members were and are "consumers" as that term is defined in 15 U.S.C. § 1681a(c).

20

62.     At all pertinent times, Equifax was and is a "consumer reporting agency" as that term is defined in 15 U.S.C. § 1681a(f).

63.     At all pertinent times, the personally identifiable information of Plaintiffs and Class members possessed by Equifax and accessed by third parties through the data breach was and is a "consumer report" as that term is defined in 15 U.S.C. § 1681a(d)(1) to encompass:

> any written, oral or other communication of any information by a consumer reporting agency bearing on a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—
>
> (A) credit or insurance to be used primarily for personal, family, or household purposes;
>
> (B) employment purposes; or
>
> (C) any other purpose authorized under [15 U.S.C. § 1681b].

64.     The FCRA requires Equifax, as a consumer reporting agency, to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information *in a manner which is fair and equitable to the consumer, with regard to the confidentiality*, accuracy, relevancy, and proper utilization of such information in accordance with the requirements" of the Act.  15 U.S.C. § 1681(b) (emphasis added).

21

65.     The FCRA further requires Equifax to "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e(a). These permissible purposes permit disclosure *only*: (1) in response to a court order, 15 U.S.C. § 1681b(a)(1); (2) in accordance with written instructions of the consumer, 15 U.S.C. § 1681b(a)(2); (3) to a person reasonably believed to intend to use the information in connection with credit issuance, employment, insurance underwriting, license eligibility, investment, legitimate business need, or government-issued travel authorization, 15 U.S.C. § 1681b(a)(3); (4) in response to a government child-support agency request, 15 U.S.C. § 1681b(a)(4)-(5); or (5) in connection with a federal government agency's receivership or liquidation, 15 U.S.C. § 1681a(6).

66.     Equifax failed to adopt and maintain reasonable procedures with regard to confidentiality of consumer information or to limiting the furnishing of consumer report information to the permissible purposes under the FCRA.

67.     Equifax failed to take reasonable and appropriate measures to secure, safeguard and protect Plaintiffs' and Class members' PII in violation of the FCRA.

68.     Equifax's foregoing violations of the FCRA proximately caused the data breach in which Plaintiffs' and Class members' PII was unlawfully accessed by unauthorized third parties.

22

69.     In light of the prior publication of information about the website application vulnerability at issue, widely publicized data breaches of other financial and consumer services institutions in the years before the Equifax data breach, and the many studies by government agencies and other entities documenting the harms to consumers from breaches of their personal data, Equifax's violations of the FCRA as set forth herein were willful and reckless.

70.     Equifax's willful and reckless conduct provided a means for unauthorized intruders to obtain and misuse Plaintiffs' and Class members' PII for criminal purposes that are not permissible under the FCRA.

71.     Plaintiffs and Class members have been damaged by Equifax's willful and reckless failure to comply with the FCRA.

72.     Plaintiffs and Class members therefore are each entitled to recover "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000."  15 U.S.C. § 1681n(a)(1)(A).

73.     Plaintiffs and Class members also are entitled to punitive damages, costs of the action, and reasonable attorneys' fees.  15 U.S.C. § 1681n(a)(2)-(3).

## COUNT II
## NEGLIGENT VIOLATION OF THE FCRA,
### 15 .S.C. §§ 1681b, 1681e, and 1681o

74.     Plaintiffs repeat and re-allege each and every allegation set forth

above with the same force and effect as if fully set forth herein.

75.     At all pertinent times, Plaintiffs and Class members were and are

"consumers" as that term is defined in 15 U.S.C. § 1681a(c).

76.     At all pertinent times, Equifax was and is a "consumer reporting

agency" as that term is defined in 15 U.S.C. § 1681a(f).

77.     At all pertinent times, the personally identifiable information of

Plaintiffs and Class members possessed by Equifax and accessed by third parties

through the data breach was and is a "consumer report" as that term is defined in

15 U.S.C. § 1681a(d)(1) to encompass:

> any written, oral or other communication of any information by a
> consumer reporting agency bearing on a consumer's creditworthiness,
> credit standing, credit capacity, character, general reputation, personal
> characteristics, or mode of living which is used or expected to be used
> or collected in whole or in part for the purpose of serving as a factor
> in establishing the consumer's eligibility for—

> (D) credit or insurance to be used primarily for personal, family, or
>       household purposes;

> (E) employment purposes; or

> (F) any other purpose authorized under [15 U.S.C. § 1681b].

78.    The FCRA requires Equifax, as a consumer reporting agency, to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information ***in a manner which is fair and equitable to the consumer, with regard to the confidentiality***, accuracy, relevancy, and proper utilization of such information in accordance with the requirements" of the Act.  15 U.S.C. § 1681(b) (emphasis added).

79.    The FCRA further requires Equifax to "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title."  15 U.S.C. § 1681e(a).  These permissible purposes permit disclosure ***only***:  (1) in response to a court order, 15 U.S.C. § 1681b(a)(1); (2) in accordance with written instructions of the consumer, 15 U.S.C. § 1681b(a)(2); (3) to a person reasonably believed to intend to use the information in connection with credit issuance, employment, insurance underwriting, license eligibility, investment, legitimate business need, or government-issued travel authorization, 15 U.S.C. § 1681b(a)(3); (4) in response to a government child-support agency request, 15 U.S.C. § 1681b(a)(4)-(5); or (5) in connection with a federal government agency's receivership or liquidation, 15 U.S.C. § 1681a(6).

80.    Equifax failed to adopt and maintain reasonable procedures with regard to confidentiality of consumer information or to limiting the furnishing of consumer report information to the permissible purposes under the FCRA.

81.    Equifax failed to take reasonable and appropriate measures to secure, safeguard and protect Plaintiffs' and Class members' PII in violation of the FCRA.

82.    Equifax's foregoing violations of the FCRA proximately caused the data breach in which Plaintiffs' and Class members' PII was unlawfully accessed by unauthorized third parties.

83.    In light of the widely publicized data breaches of other financial and consumer services institutions in the years before the Equifax data breach and the many studies by government agencies and other entities documenting the harms to consumers from breaches of their personal data, Equifax's violations of the FCRA as set forth herein were at the very least negligent.

84.    Equifax's negligent conduct provided a means for unauthorized intruders to obtain and misuse Plaintiffs' and Class members' PII for criminal purposes that are not permissible under the FCRA.

85.    Plaintiffs and Class members have been damaged by Equifax's negligent failure to comply with the FCRA.

86.    Plaintiffs and Class members therefore are each entitled to recover "any actual damages sustained by the consumer."  15 U.S.C. § 1681o(a)(1).

87.    Plaintiffs and Class members also are entitled to recover their costs of the action, as well as reasonable attorneys' fees.  15 U.S.C. § 1681o(a)(2).

## COUNT III
## NEGLIGENCE

88.     Plaintiffs repeat and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

89.     By accepting and storing Plaintiffs' and Class members' PII in its data system, Equifax assumed a duty to exercise reasonable care to protect, secure, and safeguard the PII through use of commercially reasonable methods.

90.     Equifax owed a duty of care to Plaintiffs and Class members, who did not consent to Equifax's collection and storage of their PII, to not subject them to an unreasonable risk of harm through breach of their PII, which was reasonably foreseeable in light of recent industry experience.

91.     Equifax owed Plaintiffs and Class members a duty to protect their PII using reasonable and adequate security measures and systems that are compliant with industry-standard practices.

92.     Equifax owed Plaintiffs and Class members a duty to establish procedures to timely detect and act to staunch any data breach and timely notify them of any such breach.

93.     It was reasonably foreseeable to Equifax that its failure to exercise reasonable care to protect and secure Plaintiffs' and Class members' PII would result in unauthorized third parties gaining access to, possession of, and control over the PII.

94.    As a direct and proximate cause of Equifax's negligent conduct, Plaintiffs and Class members suffered damages, including:  lost time and effort to mitigate the actual and potential impact of the data breach; unauthorized charges on credit accounts or cards; inability to use debt or credit cards because they were cancelled, suspended, or otherwise rendered unusable; late-fee charges and foregone cashback rewards; and emotional distress and/or anxiety over their exposure to actual or potential identity theft.  Additional forms of economic damage and injury may be discovered after a thorough investigation of the facts and events pertaining to the Equifax data breach.

## COUNT IV
## NEGLIGENCE PER SE

95.    Plaintiffs repeat and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

96.    Equifax's violations of the FCRA, as set forth herein, constitute actionable negligence *per se* under New Jersey law.

97.    The FCRA's purpose is, in relevant part, to protect consumers who, without their consent, have had their PII entrusted to third-party CRAs, including Equifax.

98.    The FCRA applies to Equifax as a consumer reporting agency and to its conduct alleged herein.

99.     As set forth in Counts I and II herein, Equifax violated the FCRA by, among other things:

    a.    failing to adopt and maintain reasonable procedures with regard to confidentiality of consumer information, as required by 15 U.S.C. § 1681(b);

    b.    failing to limit the furnishing of consumer report information to the permissible purposes under the FCRA, as required by 15 U.S.C. §§ 1681b(a) and 1681e(a); and

    c.    failing to immediately notify Plaintiffs and Class members of the data breach of their PII that resulted from the foregoing failures.

100.    As a direct and proximate cause of Equifax's FCRA-violating and negligent *per se* conduct, Plaintiffs and Class members suffered damages, including:  lost time and effort to mitigate the actual and potential impact of the data breach; unauthorized charges on credit accounts or cards; inability to use debt or credit cards because they were cancelled, suspended, or otherwise rendered unusable; late-fee charges and foregone cashback rewards; and emotional distress and/or anxiety over their exposure to actual or potential identity theft.  Additional forms of economic damage and injury may be discovered after a thorough investigation of the facts and events pertaining to the Equifax data breach.

## COUNT V
## INVASION OF PRIVACY

101.   Plaintiffs repeat and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

102.   Plaintiffs' and Class members' PII is private information.

103.   Dissemination and publication of Plaintiffs' and Class members' PII would be highly offensive to a reasonable person.

104.   The public has no legitimate interest in knowing Plaintiffs' and Class members', *i.e.*, one another's, PII.

105.   Equifax's failure to safeguard and protect Plaintiffs' and Class members' PII directly and proximately resulted in unreasonable publicity to Plaintiffs' and Class members' private lives.

106.   Plaintiffs and Class members have a legal interest in the privacy of their PII.

107.   Equifax's failure to safeguard and protect Plaintiffs' and Class members' PII was a direct and proximate cause of the data breach wherein this information was obtained by unauthorized third parties, thereby depriving Plaintiffs and Class members of their legal interest in the privacy of this information.

108.   As a direct and proximate cause of Equifax's invasion of their privacy, Plaintiffs and Class members suffered damages, including:  lost time and

effort to mitigate the actual and potential impact of the data breach; unauthorized charges on credit accounts or cards; inability to use debt or credit cards because they were cancelled, suspended, or otherwise rendered unusable; late-fee charges and foregone cashback rewards; and emotional distress and/or anxiety over their exposure to actual or potential identity theft.  Additional forms of economic damage and injury may be discovered after a thorough investigation of the facts and events pertaining to the Equifax data breach.

## COUNT VI
## VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT,
### N.J. Stat. Ann. §§ 56:8-2 and 56:8-19

109.   Plaintiffs repeat and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

110.   Plaintiffs and Class members are "persons" as that term is defined in N.J. Stat. Ann. § 8-1(d).

111.   Equifax is engaged in the "sale" of "merchandise" as those terms are defined in N.J. Stat. Ann. § 56:8-1(e) and (c).

112.   Equifax's collection and storage of Plaintiffs' and Class members' PII without their consent and without adopting and maintaining reasonable procedures to safeguard and protect this personal information constitutes an "unconscionable commercial practice" and/or a "deception, fraud, false pretense, false promise, or the knowing concealment suppression, or omission of any material fact with intent

that others rely . . . in connection with the sale or advertisement of any

merchandise" and thus is an "unlawful practice" under N.J. Stat. Ann. § 56:8-2.

113.   The breach of Equifax's data system was and is a "Breach of

Security" as that term is defined in N.J. Stat. Ann. § 56:8-161

114.   Equifax's knowing failure to disclose this breach of security to

Plaintiffs and Class members "in the most expedient time possible and without

unreasonable delay," as required by N.J. Stat. Ann. § 56:8-163(a), also is an

"unlawful practice" under N.J. Stat. Ann. §§ 56:8-2 and 56:8-166.

115.   Equifax's unlawful practices caused directly and proximately caused

the unauthorized dissemination of Plaintiffs' and Class members' PII to third

parties having no legally permissible purpose to access this information.

116.   As a direct and proximate cause of Equifax's unlawful practices,

Plaintiffs and Class members suffered damages, including:  lost time and effort to

mitigate the actual and potential impact of the data breach; unauthorized charges

on credit accounts or cards; inability to use debt or credit cards because they were

cancelled, suspended, or otherwise rendered unusable; late-fee charges and

foregone cashback rewards; and emotional distress and/or anxiety over their

exposure to actual or potential identity theft.  Additional forms of economic

damage and injury may be discovered after a thorough investigation of the facts

and events pertaining to the Equifax data breach.

117.   Plaintiffs and Class members therefore are entitled to treble their damages, appropriate injunctive or other equitable relief, and costs of suit and reasonable attorneys' fees, under N.J. Stat. Ann. § 56:8-19.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that the Court enter judgment on their behalf and on behalf of the Class defined herein, by adjudging and decreeing that:

A.   This action may proceed as a class action under Fed. R. Civ. P. 23(b)(3) with Plaintiffs serving as the Class Representatives, and with Plaintiffs' undersigned counsel as Class Counsel;

B.   Equifax has violated the FCRA and NJCFA;

C.   Equifax must adequately protect Plaintiffs' and Class members' PII going forward;

D.   Plaintiffs and Class members are entitled to compensatory, statutory, treble, and punitive damages, costs of suit--including the costs of notice of class action certification and judgment, and reasonable attorneys' fees under the FCRA and NJCFA;

E.   Plaintiffs and Class members are entitled to pre-judgment and post-judgment interest on the damages awarded them; and

F.   Plaintiffs and Class members are entitled to such further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all claims asserted herein that are so triable.

## CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify to the best of my knowledge that the matter in controversy herein also is the subject of the following nation-wide class action cases:

(1) *Christen et al. v. Equifax Inc.*, No. 1:17-cv-06951-RBK-AMD (D.N.J.) (filed 9/11/2017);

(2) *McGonnigal et al. v. Equifax Inc.*, No. 1:17-cv-3422 (N.D. Ga.) (filed 9/7/2017);

(3) *Amadick et al. v. Equifax Info Serv's, Inc.*, No. 17-cv-4196 (D. Minn.) (filed 9/8/2017);

(4) *Pantaze et al. v. Equifax Info. Serv's, LLC*, No. 2:17-cv-1530 (N.D. Ala.) (filed Sept. 11, 2017);

(5) *Dremak v. Equifax Inc.*, No. 3:17-cv-1829 (S.D. Cal.) (filed Sept. 8, 2017);

(6) *Tanks v. Equifax Inc.*, No. 3:17-cv-1832 (S.D. Cal.) (filed Sept. 11, 2017);

(7) *Austin et al. v. Equifax Inc.*, No. 2:17-cv-4045 (E.D. Pa.) (filed Sept. 11, 2017);

(8) *Mann v. Equifax Info. Servs. LLC*, No. 2:17-cv-4100 (E.D. Pa.) (filed Sept. 13, 2017).

Dated:        September 14, 2017

Respectfully submitted,

**BEREZOFSKY LAW GROUP, LLC**

By:    *Esther E. Berezofsky*
Esther E. Berezofsky, Esq.
Woodland Falls Corporate Center
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002-1163
Phone:  (856) 667-0500
Fax:      (856) 667-5133
Email:   eberezofsky@wcblegal.com

Michael J. Quirk, Esq.
(*Pro Hac Vice Application Forthcoming*)
1515 Market Street, Suite 1300
Philadelphia, PA 19102-1929
Phone:  (215) 557-0099
Fax:      (215) 557-0673
Email:   mquirk@wcblegal.com

**WILLIAMS CEDAR, LLC**
Gerald J. Williams, Esq.
Christopher Markos, Esq.
1515 Market Street, Suite 1300
Philadelphia, PA 19102-1929
Phone:   (215) 557-0099
Fax:      (215) 557-0673
Email:   gwilliams@williamscedar.com
              cmarkos@williamscedar.com

*Counsel for Plaintiffs and the Putative Class*

35